[File No. 6660.]

STATE OF NORTH DAKOTA EX REL. ROY A. ILVEDSON, Relator, v. THE DISTRICT COURT, in and for Ward County, North Dakota, and the Honorable John C. Lowe, as Judge of the District Court in and for Ward County, North Dakota, Respondents.

(291 N. W. 620.)

18

Opinion filed April 13, 1940.

*Roy A. Ilvedson,* in pro. per., *B. A. Dickinson, O. B. Herigstad* and *Halvor L. Halvorson,* for relator.

*Paul Campbell,* for respondents.

CHRISTIANSON, J. The relator, Roy A. Ilvedson, has applied to this court for a supervisory writ to be directed to the district court of Ward county, in the Fifth Judicial District, and to the Hon. John C. Lowe, one of the judges of the Fifth Judicial District, which writ shall set aside and annul the following order entered by said Judge Lowe:

"Whereas, It appearing to the undersigned that a petition and demand was presented to Roy Ilvedsen (Ilvedson), state's attorney of Ward county, on or about May 5, 1939, by certain individuals representing the Good Government League of Minot, North Dakota, that he institute an action in behalf of Ward county against the county commissioners and others for the recovery of debts due Ward county from said county commissioners and others, arising out of illegal allowances and payments of monies by said county commissioners, and receipt thereof by others, a copy of which is hereto attached for reference; and ,

"Whereas, Various taxpayers orally presented requests to the under-

signed to appoint an attorney to proceed with a case against the county commissioners and others as demanded of the state's attorney, which requests resulted in certain correspondence between the undersigned and the state's attorney, which correspondence is attached hereto for reference;

"Whereas, It appears from said correspondence that the state's attorney, after full investigation, has commenced certain actions against the county commissioners for small amounts, and some settlements made thereon, and that no other actions are contemplated by the state's attorney; and

"Whereas, The undersigned is informed and believes that the records of the county auditor's office available to the state's attorney show large amounts of money illegally paid and ordered paid by the county commissioners to themselves and others, but upon which the said state's attorney has failed, neglected, and refused to commence any actions to recover the same as required by law;

"Whereas, The undersigned has been presented with a request that such action be commenced, and that counsel be appointed, said request being dated November 4, 1939, and is attached hereto for reference; and

"Whereas, The undersigned is satisfied that such an action should be prosecuted and that the state's attorney has failed and neglected to perform his duty as provided by law, and that the state's attorney is not a proper person to prosecute a case by Ward county against the county commissioners and others for the recovery of money; now, therefore,

"It is ordered that Paul Campbell, an attorney at law, be and he hereby is appointed for the purpose of commencing an action in the name of Ward county and against the county commissioners and others for the recovery of any and all monies due Ward county from such persons not barred by the Statute of Limitations;

"It is further ordered that this order be entered upon the minutes of the court.

"Dated at Minot, North Dakota, this 7th day of February, 1940.

"Jno. C. Lowe,
"District Judge."

The order was entered without notice and without hearing. The

record certified to this court contains the following as the papers on which the order is based:

The petition and demand presented to the state's attorney on May 5th, 1939.

A petition addressed to Judge Lowe, dated June 1st, 1939.

A petition addressed to Judge Lowe, dated November 4th, 1939.

Certain correspondence between the state's attorney and Judge Lowe.

A copy of a general report made by the state's attorney on the investigation of the irregular charges made by the county commissioners of Ward county.

The petition and demand presented to the state's attorney on May 5th, 1939, bears the signatures of six persons who are declared to be taxpayers and electors of Ward county and members of the Good Government League. There is nothing in the record to indicate who compose the Good Government League or what the purposes and objectives of that organization are. The petition contains a general statement that there are certain claims and demands in favor of the county arising out of illegal fees and excessive charges made by the members of the board of county commissioners of Ward county, and it is stated that this appears from the record and proceedings had in the district court, the opinions of the attorney general's office and proceedings had in the supreme court, and demand is made that the state's attorney forthwith bring an action in the name and behalf of the county for the recovery of any and all illegal fees, claims and demands allowed and paid to any member of the board of county commissioners of Ward county. The petition addressed to Judge Lowe, dated June 1st, 1939, calls attention to the written demand made upon the state's attorney during the month of May and states that no action has been commenced and asks the district court to appoint some suitable person to institute any and all actions and proceedings necessary for recovery in the name and behalf of Ward county of illegal fees, claims, and demands paid by the members of the board of county commissioners. To this petition is attached a sheet of paper containing the signatures of six persons. The petition dated May 5th, 1939, is of similar import and is signed by nine persons, some of whom also signed the former petition. The petition dated June 1st recites that the signers are electors and taxpayers of Ward county, and the petition dated November

4th recites that the signers are citizens and taxpayers of Ward county. Both petitions ask that an attorney be appointed to bring proper action to recover moneys due the county on account of illegal fees, claims and demands unlawfully allowed by the county commissioners. None of the petitions purport to point out or identify any particular claim in any stated amount or against any named person or persons. The statements in the petitions are to the general effect that certain claims exist, but there is no attempt to give any dates, or identify any transactions, or any particular payment or payments by the county commissioners, claimed to have been illegal. The only reference made in any document to any specific actions or claims are contained in letters of the state's attorney to the effect that certain actions have been brought against certain named county commissioners for certain amounts, and in the report made by the state's attorney a list is set forth of certain amounts paid by certain persons in settlement of claims that had been under investigation. None of the petitions were verified, and the record contains no other statement under oath.

The order involved in this proceeding is predicated upon § 3376, Compiled Laws 1913; and the ultimate question for determination here is whether such statute authorized the judge of the district court to make the order. So far as material here, said § 3376 provides:

"The state's attorney is the public prosecutor, and must:

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"2. Institute proceedings before magistrates for the arrest of persons charged with or reasonably suspected of public offenses, when he has information that such offenses have been committed. . . .

"3. Draw all indictments and informations, defend all suits brought against the state or his county, prosecute all bonds forfeited in the courts of record and all actions for the recovery of debts, fines, penalties and forfeitures accruing to the state or his county.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"9. It is the intention of this article to make the attorney-general, his assistants and the state's attorney the only public prosecutors in all cases civil and criminal, wherein the state, or county, is a party to the action, and that they only shall be authorized and empowered to perform the duties herein set forth, except as hereinafter provided. The attorney-general or his assistants are authorized to institute and

prosecute any cases in which the state is a party whenever in their judgment it would be to the best interests of the state so to do, and in case the state's attorney of any county refuses or neglects to perform any of the duties prescribed in subdivisions 2 and 3 of this section, after it has been properly brought to his attention, or when he has information that a public offense has been committed, or that a civil suit in which the state is a party, should be instituted and the fact of such refusal or neglect to perform such duty, and that the action is one that should be prosecuted, has been brought before the judge of the district court in the judicial district having jurisdiction of such action, by affidavit or otherwise, and said judge is satisfied that such action should be prosecuted, and that said state's attorney has failed or neglected to perform his duty, then in that case, he shall request the attorney-general or an assistant attorney-general to take charge of such prosecution, or he shall appoint, by an order to be entered upon the minutes of the court, some suitable person, an attorney-at-law, and the person so appointed shall thereupon be vested with all the powers of such state's attorney for that action, but for no other purpose, and the district court shall by order, to be entered in the minutes of the court, fix his fee therefor, which amount shall be allowed by the board of county commissioners and which amount, if so ordered by the court, shall be deducted from the salary of the state's attorney and the person so appointed shall be the only person authorized to proceed therein; provided, however, that nothing herein contained shall prevent the county commissioners of any county, in cases of public importance and with the advice and consent of the state's attorney, employing such additional counsel as may be deemed advisable, to assist the state's attorney, upon such compensation as may be agreed upon; provided, further, that the provisions of this article shall not be construed so as to abridge any of the powers conferred upon the attorney-general, his assistants or the state's attorney, . . .

"10. He is the legal adviser of the board of county commissioners. He must attend their meetings when required, and must oppose all claims and accounts presented against the county which are unjust or illegal."

Under the laws of this state the state's attorney is charged with more important duties than those which formerly were laid upon a prosecut-

ing attorney. The Constitution provides that all criminal offenses may be prosecuted by information, and authorizes the Legislative Assembly to regulate or abolish the grand jury system. N. D. Const. § 8. The framers of the Constitution, therefore, contemplated that the state's attorney might, and probably would, be charged with the duty of making inquiry into the facts and circumstances touching public offenses and to institute prosecutions where the inquiry disclosed reasons therefor. Conformable to the constitutional authorization, the legislature charged the state's attorney with the duty to make such inquiry, and in proper cases to institute prosecutions, and conferred upon him power commensurate with the duty imposed. Comp. Laws 1913, §§ 10,-629, 10,656; Kittler v. Kelsch, 56 N. D. 227, 216 N. W. 898, 56 A.L.R. 1217. When a question arises whether a civil action may, or should, be instituted, the state's attorney is required to determine whether, under the facts which have been brought to his attention, or which he has ascertained, a cause of action exists in favor of the state or county, and "as to when, how and against whom to proceed." 18 C. J. p. 1316; Rothrock v. Walker, 197 Ark. 846, 125 S. W. (2d) 459. It is apparent, therefore, that as to both civil and criminal cases, the state's attorney is vested with important duties requiring the exercise of judgment and discretion. As was said by the supreme court of Wisconsin, the office of state's attorney "is held as a public trust, and the incumbent is charged with grave responsibilities calling for exercise of learning of the law and sound judgment." Re Bentine, 181 Wis. 587, 196 N. W. 214.

The office of state's attorney is "imbedded" in the state Constitution. N. D. Const. § 173; Ex parte Corliss, 16 N. D. 470, 114 N. W. 962; State v. Flavin, 35 S. D. 530, 153 N. W. 296, Ann. Cas. 1918A, 713. The people reserved to themselves the right to choose the state's attorney at a general election. The Constitution provides that "at the first general election held after the adoption of this Constitution, and every two years thereafter, there shall be elected in each organized county in the state, . . . state's attorney," who shall be an elector in the county in which he is elected, and who shall hold his office until his successor is elected and qualified, and the Legislative Assembly shall prescribe his duties and compensation. N. D. Const. § 173. The Constitution further provides that certain officers (including the state's

attorney and other county officers named in § 173 of the Constitution) "shall be subject to removal for misconduct, malfeasance, crime or misdemeanor in office, or for habitual drunkenness or gross incompetency in such manner as may be provided by law." N. D. Const. § 197. "The provisions of the Constitution are mandatory and prohibitory unless, by express words, they are declared to be otherwise." N. D. Const. § 21. It is apparent, therefore, that a state's attorney, chosen by the electors of an organized county conformable to law, may be removed only for one or more of the causes enumerated in the Constitution. State ex rel. Holmes v. Shannon, 7 S. D. 319, 64 N. W. 175; People ex rel. Emerson v. Shawver, 30 Wyo. 366, 222 P. 11, 29; Lowe v. Com. 3 Met. (Ky.) 237; 22 R. C. L. p. 563; Mechem, Public Officers, § 457; 1 Cooley, Constitutional Limitations, 8th ed. p. 139.

Mechem says: "Where the Constitution provides that officers may be removed for a given cause, defining it in terms which have a definite and well understood legal meaning, it is not competent for the legislature to extend its scope by adding or incorporating offenses which do not·fall within that meaning. The statement of one cause is an implied prohibition to the legislature's adding to it or extending it to other causes." Mechem, Public Officers, § 457.

The legislature cannot strip from the office of state's attorney "the important duties inherently connected therewith;" it has no power to strip such office "even temporarily, of a portion" of its "inherent functions and transfer them" to an officer appointed by central authority. Ex parte Corliss, 16 N. D. 470, 476, 477, 114 N. W. 962.

"The governor, attorney general, and the judges are no more constitutional officers than are state's attorneys and sheriffs. It seems too obvious for discussion that the framers of the Constitution, in providing for the election of these officers by the people, thereby reserved unto themselves the right to have the inherent functions theretofore pertaining to said offices discharged only by persons elected as therein provided." Ex parte Corliss, supra (16 N. D. p. 475).

The legislature, under the express provisions of the Constitution, has power to prescribe procedure for the removal of the state's attorney for any cause within the purview of § 197 of the state Constitution. The legislature, also, has power to provide for the filling of a vacancy in the office of state's attorney, whether such vacancy be of temporary or per-

manent nature. State ex rel. Standish v. Boucher, 3 N. D. 389, 56 N. W. 142, 21 L.R.A. 539; O'Laughlin v. Carlson, 30 N. D. 213, 220, 152 N. W. 675, 678; State v. Flavin, 35 S. D. 530, 153 N. W. 296, Ann. Cas. 1918A, 713, supra. But, the legislature cannot constitutionally authorize a judge of the district court "to supplant such officer when there is no real vacancy." State v. Flavin, 35 S. D. 530, 153 N. W. 296, Ann. Cas. 1918A, 713, supra.

The district courts have certain inherent powers in the conduct of their business, and they may be vested, constitutionally, with additional powers to deal with questions that may arise in connection with, or incidental to, cases or proceedings pending before them. And so, where a case or proceeding, brought by the state, is pending in a district court and there is no state's attorney, or the state's attorney is absent or disqualified, or refuses or neglects to perform his duties as a state's attorney in such action or proceeding so that there is in fact no attorney representing the state, and there is, in a very real sense, a vacancy, the court may constitutionally be vested with power to fill the temporary vacancy by the appointment of some attorney to represent the state in that particular action or proceeding. State v. Flavin, supra. This principle has been recognized throughout the entire history of the state. Thus, § 10,867, Comp. Laws 1913, provides that in a criminal action, "if the state's attorney fails, or is unable to attend at the trial, the court must appoint some attorney at law to perform the duties of the state's attorney on such trial." And § 3379, Comp. Laws 1913, provides: "The said court, whenever there shall be no state's attorney for an organized county, or when the state's attorney is absent or unable to attend to his duties, may, when necessary, appoint, by an order to be entered in the minutes of the court, some suitable person, an attorney at law, to perform for the time being the duties required by law to be performed by the state's attorney, and the person so appointed shall thereupon be vested with all the powers of such state's attorney for that purpose; . . . Nothing in this section shall be so construed as to give the court the power permanently to fill vacancies in such office in organized counties, but such power is vested in the board of county commissioners, as elsewhere provided in this code."

The order involved here is not predicated upon the proposition that there is an action or proceeding to which the state or the county is a

party, pending before the court, and there is a temporary vacancy in the office of state's attorney, because of his absence or inability, or his refusal to attend and participate in the trial, and as a result the state or county is left without an attorney to represent it in the litigation. Here there is no action or proceeding pending. The attorney is appointed to bring an action. The order does not, nor do any of the instruments on which it is based, contain any facts from which it would be possible for any attorney to prepare a pleading in an action, or from which any one can say whether any cause of action exists. According to the recitals in the order, it will be incumbent upon any attorney, before bringing action, to investigate certain records to ascertain whether a cause of action exists, and if so, against whom and for what.

The order is predicated upon the proposition that the state's attorney has "failed, neglected, and refused to commence . . . actions" which it was his duty to institute, and that he "has failed and neglected to perform his duty as provided by law."

Willful refusal of a state's attorney to perform his official duty is a misdemeanor (Comp. Laws 1913, § 9830), constitutes official misconduct, and is a ground for removal from office. N. D. Const. § 197. The grounds set forth in the statute for an order appointing an attorney to institute an action are grounds for removing the state's attorney from office under the Constitution. Kittler v. Kelsch, 56 N. D. 227, 233, 216 N. W. 898, 56 A.L.R. 1217. The statute requires as a basis for the making of such order that the misconduct of the state's attorney be "brought before the judge of the district court . . . by affidavit or otherwise," and that then, if the "said judge is satisfied that such action should be prosecuted, and that said state's attorney has failed or neglected to perform his duty," the judge becomes authorized to "appoint by an order, to be entered upon the minutes of the court, some suitable person, an attorney at law, and the person so appointed," thereupon becomes "vested with all the power of such state's attorney for that action." The power of appointment which the statute vests in the judge of the district court becomes operative only after the alleged misconduct of the state's attorney has been brought before the judge "by affidavit or otherwise," and after the court has found that the alleged grounds of misconduct exist. If the court then makes an appointment, the effect thereof, according to the language of the

statute, is to deprive the state's attorney of all power and duty in relation to the action which he has failed, neglected or refused to institute, and to "vest the person so appointed with all the power of the state's attorney for that action." The obvious effect of the statute is to authorize the judge of the district court to remove the state's attorney, so far as the particular action is concerned, and to fill the vacancy resulting from the removal by the appointment of some other attorney to act as attorney in instituting the particular action in which the state's attorney has been removed. The statute not only provides that the attorney appointed shall be vested with all the powers of the state's attorney for the action in which he is appointed, and that he "shall be the only person authorized to proceed therein," but it further provides that such attorney shall be compensated for his services and that the amount paid to him shall be deducted from the salary of the state's attorney.

The legislature could provide by law for the removal of a state's attorney for any of the causes specified in § 197 of the Constitution; and it could provide for the filling of the vacancy resulting from the removal. But, the legislature could not provide that the state's attorney should be chosen in some mode other than the one prescribed by the Constitution. 1 Cooley, Constitutional Limitations, 8th ed. p. 140, note 3. It could not do indirectly what it was inhibited from doing directly. It could not strip the office of state's attorney, "even temporarily, of a portion of its inherent functions and transfer them" to some officer appointed by some authority designated by the legislature. Ex parte Corliss, 16 N. D. 470, 477, 114 N. W. 962, 965; State v. Flavin, 35 S. D. 530, 153 N. W. 296, Ann. Cas. 1918A, 713, supra.

In State v. Flavin, supra, the court said: "There are many decisions, and none that we can find to the contrary, which hold that when there is a real temporary vacancy a law authorizing the filling of it by the court is constitutional. . . .

"But we are unable to find authority for the proposition that, when the Constitution provides that an office shall be filled by the voters at an election, the court may constitutionally be clothed with the authority to supplant such officer when there is no real temporary vacancy."

The power vested in, and the correlative duty imposed upon, the legislature by § 197 of the Constitution to provide "by law" the manner in which certain public officers may be removed from office are not un-

limited. Removal may be made only upon some ground enumerated in the constitutional provision; and the framers of the Constitution, having prescribed therein the legal causes for removal of constitutional officers elected for a fixed term, and having authorized the legislature to provide "by law" the procedure to be employed in effecting a removal of such officers, obviously intended that such law should conform to the fundamental requirement of "due process of law." In other words, the constitutional provision necessarily implies that any law enacted to provide the manner in which the constitutional officers so enumerated may be removed, shall conform, and give effect, to "those fundamentals in Anglo-Saxon jurisprudence, essential and recognized in any free and democratic government, namely, the right of the accused to a hearing, to be confronted with his accusers, and to the right of defense." State ex rel. Wehe v. Frazier, 47 N. D. 314, 182 N. W. 545; Ekern v. McGovern, 154 Wis. 157, 142 N. W. 595, 46 L.R.A.(N.S.) 796; Bannerman v. Boyle, 160 Cal. 197, 116 P. 732; Welch v. Ware, 161 Cal. 641, 119 P. 1080; Dullam v. Willson, 53 Mich. 392, 19 N. W. 112, 51 Am. Rep. 128; People ex rel. Metevier v. Therrien, 80 Mich. 187, 45 N. W. 78; Throop, Public Officers, §§ 362–364; Mechem, Public Officers, § 454.

Throop (Throop, Public Officers, § 364) says: "In this country, the rule is, that where an officer holds his office for a certain number of years, 'if he shall so long behave himself well,' he cannot be removed, even for misbehavior, without notice and a hearing. So where he is appointed for a fixed term, and removable only for cause, he can be removed only upon charges, notice, and an opportunity to be heard. . . . The doctrine, that an officer can be removed only upon notice, and after a hearing, where the tenure of his office is during good behavior, or until removed for cause, or for a definite term, subject to be removed for cause . . . may be regarded as settled law in this country. And a removal, without notice and a hearing, in either of these cases, is erroneous and void."

The legislature could provide "by law" for the removal of the state's attorney for some cause specified in § 197 of the Constitution, but then only after notice and hearing such as that section necessarily implies. The fact that the removal under the statute involved here is limited in scope, so that the state's attorney is removed from office only as to

the institution and prosecution of one suit does not avoid the constitutional restriction. When construed and interpreted in the light of elementary rules of construction and interpretation, the Constitution says that a state's attorney, lawfully in office, "shall hold his office until his successor is elected and qualified;" and "shall be subject to removal for misconduct, malfeasance, crime or misdemeanor in office, or for habitual drunkenness or gross incompetency," but for no other cause; that removal shall be made only "in such manner as may be provided by law;" and that the law must provide that he be notified of the charges made against him, and that he be afforded an opportunity to defend against them. The constitutional requirements concerning removal from office apply to all removals. They apply as well to a partial or limited removal as to a complete removal. They apply as well to the removal of a state's attorney from office incident to the institution and prosecution of one action as to the absolute and complete removal of the state's attorney from office.

Assuming, without deciding, that the legislature may provide for a partial or limited removal of the state's attorney,—removal in so far as the institution and prosecution of one particular action is concerned,—clearly it may not authorize such removal except after notice and hearing. Hence, if the legislature intended to confer upon the district judge power to determine whether the state's attorney has refused or neglected to perform his duty, and to order that the state's attorney be deprived of all power and duty as such in connection with the institution and prosecution of a certain action, all without notice to the state's attorney, or opportunity to be heard on the question whether he has refused or neglected to perform his duty, then the statute is manifestly unconstitutional. But, it will not be presumed that the legislature had any such intention, unless it has clearly expressed such intention in the law itself. The presumption is that the legislature intended that the removal proceeding which it prescribed should be in accordance with the principle of due process of law. Ekern v. McGovern, 154 Wis. 157, 142 N. W. 595, 46 L.R.A.(N.S.) 796, and State ex rel. Wehe v. Frazier, 47 N. D. 314, 182 N. W. 545, supra.

State ex rel. Wehe v. Frazier, supra, involved the removal of a commissioner of the State Workmen's Compensation Bureau. That office was one created by statute. The office was for a definite term. The

statute provided that "the governor shall appoint, and *may remove for cause,*" workmen's compensation commissioners. The only provision in the Workmen's Compensation Act relating to removal was the one above quoted. In that case it was contended that notice and hearing were not required, and that the governor had power to remove from office without notice or hearing. This court held that the statute conferred no such power; that the statute necessarily implied that removal could be made only for legal cause, and only after such cause had been established at a hearing had "for the purpose of ascertaining whether or not sufficient cause for removal exists," and that the hearing must be one at which the officer is "given reasonable opportunity to be present, to know the nature of the charges against him, to cross-examine witnesses and to adduce testimony to disprove the charges." 47 N. D. 314, 182 N. W. 545.

The statute under consideration here evidences, more clearly than did the Workmen's Compensation Act, a legislative intention that a removal shall be made only conformable to the fundamental principle of due process of law. The office involved here is one established by, and imbedded in, the Constitution. The people reserved to themselves, in the Constitution, the right to elect the incumbent of the office. The office is for a definite term. The people prescribed in the Constitution itself the sole grounds on which an incumbent of the office may be removed. The legislature enacted the statute with all this in mind. The statute requires as a basis for any order that eventually may be entered, that the refusal or neglect of the state's attorney to institute some civil or criminal action that ought to be instituted shall be "brought before the judge of the district court in the judicial district having jurisdiction of such action, by affidavit or otherwise." The words "or otherwise" is a relative term.

"The words 'or otherwise,' in law, when used as a general phrase following an enumeration of particulars, are commonly interpreted in a restricted sense, as referring to such other matters as are kindred to the classes before mentioned. Cent. Dict. The phrase 'or otherwise,' when following an enumeration, should receive an ejusdem generis interpretation." People ex rel. Huber v. Feitner, 71 App. Div. 479, 75 N. Y. S. 738, 739.

Ham v. Missouri, 18 How. (U. S.) 126, 15 L. ed. 334; Grindle v.

Bunker, 115 Me. 108, 98 A. 69; Loring v. Procter, 26 Me. 18, 27; Galveston County v. Gorham, 49 Tex. 279, 290; State v. West, 106 La. 274, 30 So. 848; State ex rel. Neeves v. Wood County, 72 Wis. 629, 637, 40 N. W. 381. As employed by the legislature in the statute involved here, the term "or otherwise" means some instrument that may be made a matter of record, and of substantially similar force and effect as an affidavit, showing the existence of a cause of action, and the alleged grounds of breach of duty of the state's attorney in failing to institute an action. It was clearly the legislative intention that the affidavit or other instrument, which the statute requires to be presented to the judge of the district court, should contain a statement showing the existence of some action, either civil or criminal, that ought to be instituted; and that the state's attorney has refused or neglected to perform his duty to institute such action.

The power of a judge of the district court to appoint an attorney, other than the state's attorney, to institute an action where the state's attorney has neglected or refused to do so, springs solely from the statute. "It is a restricted and specific power which can only be exercised in accordance with the provisions of the statute." Ward County v. Jacobson, 69 N. D. 545, 288 N. W. 568, 570. See also Sayles v. Newton, 82 Mich. 84, 46 N. W. 29; Toland v. Ventura County, 135 Cal. 412, 67 P. 498.

In this case, the basic requirements prescribed by the statute are missing. The matter was not brought before the judge of the district court by affidavit or other instrument of substantially like character and effectiveness—in fact there was no instrument of any kind that showed that any cause of action, either criminal or civil, existed in behalf of the state or in behalf of the county. There was no showing by affidavit or other instrument of any substantially similar character or probative effect that the state's attorney had refused or neglected to institute any action that ought to be instituted. The petitions that were presented to the judge of the district court obviously did not constitute that showing "by affidavit or otherwise" which the statute requires must be made as a basis for the proceeding. People ex rel. Schumann v. McCartney, 34 App. Div. 19, 53 N. Y. S. 1047. The petitions contain certain general assertions or conclusions, but they are devoid of any

statement of facts. If all that is said in all the petitions and in the order in question here were embodied in a pleading, there would be no statement of facts showing that there existed any cause of action in behalf of the county that ought to be instituted. If the petitions had been verified by all the petitioners, they still would have been fatally defective in substance as a basis for a proceeding to have some attorney appointed to act instead of the state's attorney for the purpose of instituting such action. Dullam v. Willson, 53 Mich. 392, 19 N. W. 112, 51 Am. Rep. 128, and People ex rel. Metevier v. Therrien, 80 Mich. 187, 45 N. W. 78, supra. The proceeding under the statute is judicial in its nature, and in entering an order appointing some attorney to act for the state's attorney to institute an action, the judge acts in a judicial capacity and the order is subject to judicial review. State ex rel. Wehe v. Frazier, 47 N. D. 314, 182 N. W. 545, supra. The record in this case discloses noncompliance with jurisdictional prerequisites, and consequently the order is invalid.

It is argued by the respondent that under the rule announced in State ex rel. Clyde v. Lauder, 11 N. D. 136, 90 N. W. 564, the judge of the district court had power to appoint an attorney to institute the action if, and when, said judge reached the conclusion that the state's attorney, for any reason, was not a proper person to prosecute the case.

State ex rel. Clyde v. Lauder involved a different state of facts, and statutory provisions different from those involved here. The statute under which the order in question here was made, had not been enacted at the time that case arose. State ex rel. Clyde v. Lauder arose out of a criminal action. A person had been held to the district court to answer for a public offense. The state's attorney did not file a criminal information, but instead filed a statement in writing, setting forth his reasons in fact and in law for not filing an information, under a statute, which provided: "If the state's attorney, or other person appointed to prosecute, in any such case, determines that an information ought not to be filed, he must make, subscribe and file . . . a statement in writing setting forth his reasons in fact and in law for not filing an information. . . . The court must thereupon examine such statement together with the evidence filed in the case, and if, upon such examination, the court is not satisfied with such statement, the state's

attorney, or person appointed to prosecute, must be directed and required by the court to file the proper information and bring the case to trial." Rev. Code 1899, § 7984.

An attorney appeared and filed an affidavit in opposition to the reasons filed by the state's attorney. Thereafter, the trial court made an order overruling the reasons filed by the state's attorney. In so ruling, the court stated that it was the court's opinion that the state's attorney was not a proper person to prosecute the action, and thereafter the court entered an order appointing another attorney to act for the state's attorney in filing the information and prosecuting the action. The validity of that order was never questioned. Later, the judge of the district court made an order fixing the fee of the attorney who had been appointed to prosecute, and directing the county auditor to deduct the amount of such fee from the salary of the state's attorney. It was this latter order that was brought before this court for review. It was contended that the court had the power to make such order under § 1986, Rev. Code 1899, which provided: "The district court whenever there shall be no state's attorney for the county or when the state's attorney is absent or unable to attend to his duties may, when necessary, appoint by an order to be entered in the minutes of the court, some suitable person, an attorney at law, to perform for the time being the duties required by law to be performed by the state's attorney, . . . and the district court shall by order, to be entered in the minutes of the court, fix his fee therefor which amount shall be allowed by the board of county commissioners, and which amount shall be deducted from the salary of the state's attorney."

This court held that this statute did not empower the district court to make the order, which was challenged; that "none of the statutory conditions authorizing an order making deductions from the salary of the state's attorney existed;" that "a refusal to prosecute, or willful misconduct in office, will not justify any such order in a case where the state's attorney is present in court and able to perform his official duty" (Syllabus, 11 N. D. 137, 90 N. W. 564); and that such order "being made without authority of law, was null and void from the beginning." (11 N. D. 148, 90 N. W. 564.) .

It is unnecessary for us to consider here any question as to the correctness of the views expressed in the opinion in State ex rel. Clyde

v. Lauder concerning the power of the court to appoint an attorney (under Rev. Code 1899, § 7984) to file an information and prosecute the action when the state's attorney has determined that an information ought not to be filed, and has filed written reasons for not filing an information, and the district court, after examining the statement and the evidence filed in the case, has overruled such reasons, and determined that a proper information ought to be filed and the case brought to trial. No such question is involved here. The order here was made under a different statute, and under a different state of facts. The statute involved in State ex rel. Clyde v. Lauder applied only to an action actually pending before the court. In that case, the state's attorney was present in court, and the ruling for the appointment of another attorney was made in course of a matter the state's attorney was presenting to the court for determination. "The positive authority of a decision is coextensive only with the facts on which it is made." Chief Justice Marshall, in Ogden v. Saunders, 12 Wheat. (U. S.) 333, 6 L. ed. 647. The decision in State ex rel. Clyde v. Lauder is no authority for the validity of the order in question here.

. A supervisory writ will issue directing that the order entered February 7th, 1940, be vacated and annulled.

NUESSLE, Ch. J., and MORRIS, BURKE, and BURR, JJ., concur.